and Minor, People of the State of Illinois and Plano, v. D.B., Affiliated by Geneva Penson, v. Illinois Department of Children and Family Services Appellant, Dijon Schmidt. Mr. Schmidt. Thank you, Your Honor, and may it please the Court. I'm Assistant Attorney General John Schmidt, and I represent DCFS in this matter. I'll just very briefly go over the facts. This involves an attorney, Ms. Griffith, who at one point, per actually a likely period of time, worked in the Rock Island County State's Attorney's Office, and she handled a number of juvenile abuse and neglect matters during that time. And in September of 2011, she took a position as regional counsel with the Department of Children and Family Services. And the Public Defender's Office moved to disqualify her in this particular case. It was the father in this juvenile abuse and neglect case who filed the motion, which the Circuit Court not only granted in that case, but extended to all cases in which Ms. Griffith had previously appeared. We're raising two arguments as to why we believe that was erroneous. And the first would be that the father, whose initials are DB, would have lacked standing to bring the motion. And the second argument is that the circumstances in this case would not lend itself to a finding that there was a per se conflict of interest. I'll start with the standing issue. And one of the cases that we cite in our brief is the Illinois Supreme Court case of Schwartz v. Cortalone. And the court stated in that case that it is axiomatic that only a party who has been a client of the attorney, whose conduct is in question, may complain of the attorney's subsequent representation of another. And in the second district decision in Swanson that we also cite in our brief, the court held that a person who had not previously been represented by the attorney that he sought to disqualify did not have standing to seek the disqualification. So we think that's an important general rule, and it indicates here it was not the people of the state of Illinois or the Rock Island County State's attorney seeking the disqualification. It was the father, and the father had not previously been represented by Ms. Griffith. Had he appointed counsel at all? Did father have counsel during the juvenile proceedings? I believe the public defender was representing the father during the juvenile proceedings. So yes, the father did. So in a situation where the public defender had become counsel for DCFS, then father would have standing? I think yes, and I think that would be more problematic if that had happened. But doesn't standing also go to having a real interest in the outcome of the litigation? That he is a, that obviously D.B. is the minor's father, has a real interest in the outcome of the case? I think it has to be a little more than just the outcome of the litigation. I think there has to be a harm, would have to be a harm to the father, and a harm caused by this particular conflict. And we don't have any indication of that here. I think just saying that, and I think if the court were to say that all that was necessary was an interest in the outcome of the litigation, well pretty much any litigant has that. And I don't think that sort of holding would be consistent with the case law that's out there. Courts do look at whether litigants who bring disqualification motion have standing. And I think if the rule was as your Honor suggested, pretty much any litigant could assert standing. And I don't think that's the law. I don't think that would be consistent with Schwartz or with the other case law. But what is the role of DCFS in this case? Well, I think the role in this case, and generally, is it can undertake a number of tasks. Generally, it's to assist the court, it's to try to determine when issues arise as to proper placement of the child, what would be in the child's best interests. DCFS also investigates allegations of abuse and neglect. They also will, every few months, create service plans with some recommendations as to how the case should be proceeded. But DCFS is governed by the best interests of the child. And I would point out, so is the state's attorney. Now, that doesn't mean, and I want to make this clear, it doesn't mean that DCFS and state's attorneys agree 100% of the time. There are situations where they can disagree. Most of the time, they do agree. But there are situations when there can be disagreement. But, so, it would be possible that the state's attorney or the people might, in a particular instance, wish to ask for disqualification. They haven't done that here, though. And our argument would be that this is something that ought to be done more on a case-by-case basis, and not a blanket disqualification from every case that Ms. Griffith has been involved in. Did the blanket disqualification affect delinquency petitions as well as abuse and neglect petitions? I believe the answer to that is no, Your Honor. But if I may, I'm going to be up here for rebuttal. And if I could ask Ms. Griffith very briefly before the rebuttal, I'll give you a more definite answer on that. And I apologize that I don't know offhand. Now, the father's attorney has cited a couple of cases in support of the standing argument. And one is this Court's recent decision in WR, and another is the Macton case. We believe both are distinguishable. In WR, this Court held that a mother had standing in an abuse and neglect case to seek disqualification of the father's lawyer, because the father's lawyer had previously served as a mediator for both the mother and the father in a matter that this Court determined was the same matter. I think that case is different because in WR, the mediation services were provided to both the mother and father. And this Court expressed some concern that there may have been confidences involved. But it makes sense that when the services were being done for both the mother and father, when the mediation involved both, either one could seek disqualification. Here again, there is no indication that Ms. Griffith ever represented the father. And in Macton, it was ruled in a case that a stepfather had standing to seek to disqualify the stepdaughter's lawyer in a case where an order of protection was being sought against the stepdaughter. The attorney had been hired by the child's mother, and the stepfather's argument really was that the attorney should have been appointed by the court. And there was a potential conflict, not because of prior representation, as is alleged in this case, but the potential conflict was because if the mother was hiring the child's lawyer, then the lawyer might be conflicted about whom best to serve, whose interests the lawyer should be serving, the mothers or the child. So the court in Macton said, well, the stepfather's challenging the mother's right to control the litigation, and that the stepfather can do. But again, that's a different situation. That's not a situation like this one that is arising out of prior representation. So again, our position would be the father in this case did not have standing to bring this motion in this case, and certainly wouldn't have had standing in over 150 other cases where he was not even a party. As to the merits, one of the leading cases in this area, or one case that is cited, I believe, by both parties, is Darius G. out of the Second District. And that's another case, that's a case where a per se conflict was found to exist by the appellate court in an abuse and neglect case. In that situation, at one point in the litigation, I believe the public defender represented the mother, or it was the same attorney, representing the mother, and then the same attorney was appointed to represent the child. In that situation, even though the Darius Court recognized that all lawyers in this type of case are governed, are supposed to be advocating the best interests of the child, but the court pointed out that the mother's attorney should be the father. And there is certainly, and there is often, adversity between a mother who has lost custody of a child or who is being accused of abuse and neglect. There's adversity between the mother's interests and the child's. Here, again, we have a situation where DCFS and the people who would be represented by the state's attorney are both purely supposed to be interested in the best interests of the child. Thank you very much. And so I think it's a different situation than Darius G, and the situation we have here does not lend itself to being a per se conflict of interest. Again, it is possible in individual cases that there might be a conflict, but the state's attorney has not asserted any, and we believe that the state's attorney would be the proper party, or really the people of the state of Illinois would be the proper party to do that. And for those reasons, we would ask for reversal of the circuit court's orders in this case. Mr. Schmidt, I want to talk just a minute about bias. The state's attorney is the person who files the charges. Is that correct? Yes, I'll point out, theoretically, DCFS can. Theoretically, anybody can file an abuse and neglect petition, but the reality is that it's the state's attorney almost every day. And so the state's attorney, in this case, filed the charges. That's correct. And was actively prosecuting, if you will, the parents in this case? Is that a fair statement? I don't know if prosecute is the right word in this type of case, but she was... Because that's more a criminal word that is used in the criminal context. But yes, she was taking action, I think, that the father would have considered adverse to his interests. And was trying to terminate, although termination hadn't been filed, as I understand it. And still hasn't been. Ultimately was moving towards severing the relationship between the father and the child. Not necessarily. That would depend entirely on circumstances. And that's one thing that I think does distinguish this type of case. What she did was file a petition for adjudication of abuse and neglect. But not all abuse and neglect cases end up in termination. Many do not. And whether they do depends on what the parents do. If the parents, and the best word I can come up for it is rehabilitate. If they address the problem that led to removal. The state's attorney and DCFS are not necessarily going to support termination. And that's the outcome that's desired in most cases. That one reason these petitions are often filed is with the hope that only temporary removal will be necessary and that the parents will do better and will address their problems. So no, not necessarily. Who investigates allegations of abuse and neglect? DCFS is the one who investigates and that's the statute that says that is 325 ILCS 5-7.4B2. So that's DCFS's role to investigate the abuse and neglect allegations. Do they make a recommendation to the state's attorney then? As a practical matter, yes, the state's attorney then decides what to do. But DCFS would provide the information to the state's attorney. Generally, yes. In this case, I'm sure there are some cases in the 151 cases where parental rights are subject to the goal of termination. In this case, what is the permanency goal? Is it reunification? Right now it's guardianship. The intention is to place the children with an aunt who I believe lives in Georgia. And no termination petition has been filed and that is not the goal. Would you be satisfied if the remedy from this court was a remand for the trial court to make specific findings in each case? Or are you just hoping we'll set aside the order? We are hoping that you would set aside the order on standing grounds, but in the alternative I think that would be better than the situation we have now. I think that relief, a remand for findings in each case, would be better. If we were to focus on not per se conflict, but other conflict, what would be the standing requirements then? I think it would be the same. Yes, I think it would be the same. You would still need to have a situation. The general rule that Schwartz states is you have to have previously been represented by that person. I don't want to necessarily say that's the only situation, but I think it would take pretty extraordinary circumstances to allow standing other than in that situation. Thank you, Your Honors. I'm struggling with new reading glasses, so forgive me. Ms. Henson? I almost said pension because I'm cautiously optimistic one day I'll get one. Thank you, Your Honor, and may it please the Court, my name is Geneva Henson. I represent the respondent father in this case, D.B. I will not go through any recitation of the facts. Counsel has given a very good recitation of the underlying facts in this case. Do you represent any of the other parents in the other 150 cases? No, however, I do advance the argument that a per se rule is applicable in this case. Can our ruling affect only your client, or can it be so broad as to affect clients that you do not represent? Who are you arguing on behalf of here today, with permission? The County of Rock Island retained me to represent its clients in this matter. The only case before this Court is D.B.'s case. But in any case, the Department has made the suggestion in its brief that this is a matter of first impression as to whether or not this lawyer, Ms. Griffith, who was previously working for the State's Attorney, can be disqualified from representing the Department of Children and Family Services in these cases. This is not a matter of first impression. The case law from the appellate court is consistent that attorneys may not switch sides during the pendency of juvenile abuse and neglect cases. And that's been the holding of all the cited cases in which something similar has happened. N. Ray Darius G., N. Ray Paul F., N. Ray Quadisha, and N. Ray Darius G., the Second District, said this. First of all, the juvenile abuse and neglect proceedings are a very unique type of proceedings in Illinois law. There are many parties involved, parents, children, the State, the Department of Children and Family Services as the guardian of the children, and sometimes other individuals involved on behalf of the children as well. All of the parties, all of the proceedings are guided by the best interests of the child. Not necessarily what's in any particular party's best interest. But certainly all of the parties can have a different idea of what is in the best interest of the child. The Department has repeatedly argued in its brief that the interest of the people of Illinois and the interest of the Department of Children and Family Services are almost always aligned. But that's simply an assumption. Here is what N. Ray Darius G. says. Even within the unified goal of best interests, and I'm at page 738, competing positions clearly may exist within the unified goal of best interests. We agree with S. G. that the better rule is to apply, I'm paraphrasing, is to apply a per se conflict rule to these termination proceedings. And I quote, a clear rule better informs attorneys that while multiple parties from the public defender's office may substitute to represent the same client, the same attorney may not during the proceedings appear on behalf of different clients. A clear rule will inform the trial court not to accept an appearance from an attorney who already at some point during the proceedings appeared on behalf of another party. And prejudice is presumed in these situations. The reason that we are looking at all of these cases is that in all of these cases, even if it's not the goal right now, the termination of parental rights is a grave possibility. And termination of parental rights is a drastic measure. For that reason, there are very good policy reasons to apply a per se rule. The court said in Darius G. and in the other cited cases, that because of the drastic nature of parental termination, these proceedings should be governed by strict procedural rules, which include not allowing attorneys to switch sides during the pendency of these proceedings. During the pendency of this proceeding, what attorney represented the interest of DCFS in this case? Who entered their appearance on behalf of DCFS? Judge, I actually don't know. The record does not reflect who was representing the department prior to Ms. Griffith. If no party entered an appearance on behalf of DCFS, are they a party? Yes, as guardian of the children. In any case, it cannot be assumed that the interest of DCFS and the position of DCFS and the position of the state of Illinois, the people of the state of Illinois, will always be the same. These proceedings, once a petition for abuse and neglect is filed, tend to go on and on and on. During these proceedings, the parents, who are the respondents, are forced, for lack of a better word, to follow a service plan, which frequently puts them through counseling, parental instruction classes, all sorts of treatment and interventions to improve their parenting. Now, during these proceedings, there is nothing that guarantees that the state and the Department of Children and Family Services will take the same position on the nature of the parents' progress, on the sufficiency of the parents' progress in these proceedings. And for that reason, there should be a per se rule preventing counsel from switching sides, even from the state to the Department of Children and Family Services. For that matter, some of these cases in which counsel has been disqualified, and they're cited in the briefs, involve the same attorney representing a respondent mother and a respondent father at different times during the proceedings. One could make the same argument that counsel has made about the interest of the respondents being aligned, so that there is no conflict. One could argue there's no conflict in an attorney representing a respondent mom and a respondent father, because their interests are aligned. However, the case law informs us differently. The case law has actually reversed judgments terminating parental rights where the respondent mom and the respondent father were represented by the same attorney at different times in the proceedings. One simply cannot tell at the outset of these proceedings what position any party is going to take, or what progress any party is going to make on the best interest of the child. And for that reason, attorneys should not be able to represent more than one party during the pendency of the proceedings. Without the informed consent. I'll move on to the issue of standing, which counsel addressed to this court. In WR, this court held that even though the attorney who was disqualified was never a representative, never represented the mother who sought disqualification, disqualification was still appropriate in that case, because the mom who sought disqualification in that case had a real interest in the outcome of the litigation. She wasn't just some interloper or someone who was trying to use this attorney's appearance on the father's behalf for her personal or tactical advantage. She was someone who had an interest in the outcome of the case and in the custody and care of the children involved in the case. This is the same here. DB is a father, is the respondent father here. The minor child, he's fighting to preserve his parental rights in the minor child. So he can't be seen as someone who is just tangentially involved and lacking standing to challenge Ms. Griffith's representation of the Department of Children and Family Services. In its reply brief, the state cites the Powell case decided by the Supreme Court last year. And in citing that case, the state says that the Supreme Court has rejected for standing purposes the argument that just a person with a general interest in the outcome of the litigation can have standing to challenge the qualification of an attorney. But this case is very different from Powell. Powell was, first of all, a case involving the substitution of judges. And the parties who were challenging the failure to substitute judges on appeal in that case were parties who had their own opportunity in the trial court to file for the substitute, seek substitution of judges, and they did in fact seek and receive substitution of judges in that case. Therefore, the Illinois Supreme Court said they lacked standing because they already got the relief they were entitled to in the trial court. So they had no standing to raise this issue in the appellate court. Powell is a very different case from this one. And the facts of this case do show that D.B. and the other respondent parents have the standing to challenge Ms. Griffith's appearance on behalf of the Department of Children and Family Services. We would ask this court to affirm the trial court's ruling. If this court chooses not to affirm, however, we would ask you to remand for 150 evidentiary hearings in the trial court, all based on the same evidence. If we remand for findings of fact in one case, this case, J.A. 94, don't we think maybe the trial court could read between the lines? I'm not convinced that we've got other orders out there. I don't know if we entered orders in other cases. We've only got the one order which has one case number on it. I know I've peppered you with questions about who you're representing and how far we've reached here. Not to be unkind to you, but are you trying to... I don't know that there was a written order entered into the court file in every single one of these cases. But certainly the trial court was clear in its ruling. His order is colorful and well stated and articulate. I agree. But there's one case number on that order. There is one case number in the caption, yes. But the trial court was clear that it was disqualifying in all of the pending J.A. cases, up to and including... It's obvious that that's what he did. What's not clear to me is how we get jurisdiction to consider what he did in any case other than this one. I just wanted your input because it's something we're obviously going to have to discuss and we won't have you later to ask these questions. Our position would be that the trial court's ruling was adopted in all of the cases through 11 J.A. 111. All of the cases pending at that time, which began with... That means 09 J.A. 94 and whatever additional cases were filed after 94 in 2009 through all cases filed up until the time Ms. Griffith took her new job. It's kind of staggering and I'm afraid maybe it's not just 150 cases. It's a little ambiguous and I appreciate your input. I just wonder about the potential for severing all of the cases other than the one that's before us in that order. I just don't see how we have jurisdiction to deal with any of the others. Certainly the trial court is... If your honors do not find that his order is already applicable in all of these cases. Well you can rest assured that this case certainly was not pre-decided based on the questions that we're going to bring you with. Let me ask you another candid question and that is, do you think Ms. Griffith has violated ethical standards? I don't believe that it was her intention to violate any ethical standard. No. This is simply a rule based on... So you think maybe there's a difference between serving with a conflict of interest under the ARDC provisions or the professional rules? And whether she should be disqualified? I think there's a question of her... Yes, I think there's a question of her intent in serving with a conflict of interest. Ms. Griffith, if you asked her today, I'm sure will tell you she'd never believe that she had a conflict of interest. I do not believe she's violated any ethical rule. I simply believe that because of the nature, the unique nature of these proceedings, what she did in switching sides was not allowed. It is not permissible. Thank you very much for your indulgence. Counsel? Is it only abuse and neglect cases? Did you figure that out? Yes. And how are we supposed to figure out what case numbers apply? The judge is kind of generic in the language he uses in his order. I believe the appellant's brief has... Yes, the judge is generic and doesn't really specify the cases. I believe the appendix to our brief has a list of the cases. Is that incorporated into the court's order? It's not, no. This is just a list that was provided for this court's convenience.  I'll just try to make a couple of brief points. I think we read the Powell case a little bit differently than counsel for the father does. In that case, the Supreme Court said that co-defendants did not have standing to complain of the denial of a different defendant's motion for substitution of judges. And we think that really does indicate that something more than an interest in the outcome of the litigation would be the standard for standing. Otherwise, all of those co-defendants had an interest in the outcome of that litigation. So if that was the standard, they should have been able to assert the rights of the defendant whose motion was denied, but they were not able to do that. And I would just, again, talking about, I think Darius G is an important case for this court to consider and to look at. And counsel was right to say, I believe there is authority that if you have a situation where the same attorney represents the mother and father in an abuse and neglect proceeding, that would be a per se conflict. But in that situation, the lawyer would be moving from representing the mother's interests to the father's interests. And here, both DCFS and the people, the state's attorney, would both be in the interests of the children. So I don't think the characterization of switching sides is quite correct. Again, counsel's right, and I acknowledge this in my opening, there might be specific cases, well, there are specific cases where the state's attorney and DCFS disagree over some points. And in individual cases, that might lead a court to conclude that there's a circumstances of those individual cases should be analyzed if the state's attorney, the proper party to make the complaint, if the state's attorney complains of a possible conflict, then the circumstances of those cases should be analyzed. We don't believe there should be a per se rule that would disqualify somebody in Ms. Griffith's situation. Did DCFS enter an appearance in this case? And unfortunately, I'm not sure of that either, Your Honor. We'll look at the record. Do you think DCFS is a party to the case? And I'm not sure of the answer to that. What I'll do is, I'll I think as a practical matter, DCFS could be considered a party to most cases, even if they're not from a formal standpoint. DCFS was eventually named guardian of these minors. Yes, that's correct, as counsel represented. Under Section 8.3 of a statute called ANCRA, the Abuse, Neglected and Neglected Children Reporting Act, which is 325 ILCS 5-8.3, DCFS assists the court in an abuse and neglect proceeding and provides information to the court as the court asks. What's the statutory site again? Oh, I'm sorry. It's 325 ILCS 5-8.3. And as a practical matter, the courts often will ask DCFS to become fairly involved, and in this case, DCFS was the guardian, so there is even if they're not formally a party, there is serious involvement on DCFS's part, and the court would be asking for DCFS's input. Okay, and I'm guessing that you share Ms. Penson's thoughts that Ms. Griffith is just hoping to occupy a position as a public servant, formally as a prosecutor, now on behalf of DCFS and had no intent to operate under any conflict of interest. That's correct. And that's absolutely correct, Your Honor, and despite our disagreements on the issues of the case, which are respectful disagreements, we appreciate Ms. Penson's answer and wholeheartedly agree with it, and for the reasons I've said, ask that the order of the trial court be reversed or, as Your Honor suggested, reversed and remanded. And I thank the court for its attention. Well, we certainly appreciate the arguments here today and the civility that you both demonstrated to us. It is a very interesting issue and we have a lot to consider and ponder, so I sometimes predict that the decisions will be rendered without undue delay, but we have a lot of work to do in this case, so it may take a while. Don't worry yourselves if it takes a while. Thank you very much, Your Honor. We will stand and brief recess for panel change.